IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**KARMELIA MATTIX**                                                           **PLAINTIFF**

v.                                                    CIVIL ACTION NO. 3:19-cv-267-TSL-RHW

**VOLVO GROUP NORTH AMERICA, LLC AND**
**BUISE WRIGHT, INDIVIDUALLY**                                    **DEFENDANTS**

## COMPLAINT
## JURY TRIAL DEMANDED

**COMES NOW** the Plaintiff, Karmelia Mattix, by and through counsel, Watson & Norris, PLLC, and files this action to recover damages for violations of her rights under the Fair Labor Standards Act, Title VII of the Civil Rights Act, as amended, and for Tortious Interference, against Defendants, Volvo Group North America, LLC and Buise Wright, Individually. In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

### THE PARTIES

1. Plaintiff, Karmelia Mattix, is an adult African-American female resident of Shelby County, Tennessee.

2. Defendant, Volvo Group North America, LLC, is a Delaware Corporation and may be served with process through its Registered Agent: C T Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

3. Defendant, Buise Wright, Individually, is a current employee of Defendant and may be served with process at his place of employment: 100 Gateway Global Drive, Byhalia, MS 38611.

### JURISDICTION AND VENUE

3. This Court has federal question jurisdiction and venue is proper in this court.

Defendant is a covered enterprise and/or entity and is subject to the provisions of both Title VII and the Fair Labor Standards Act.

4.  Plaintiff timely filed a Charge of Discrimination with the EEOC on February 14, 2019, a true and correct copy of which is attached as Exhibit "A." The EEOC issued a Dismissal and Notice of Right to Sue on February 25, 2019, a true and correct copy of which is attached as Exhibit "B." Plaintiff timely files this cause of action within ninety (90) days of receipt of her Dismissal and Notice of Right to Sue.

## STATEMENT OF FACTS

6.  Plaintiff was initially hired by Volvo Group Trucks Operations CDC on September 21, 2015.

7.  Plaintiff started out as a Warehouse Operative and then worked her way up to the position of 2nd Shift Outbound Team Lead, beginning on May 14, 2018.

8.  When Plaintiff went through Orientation prior to working at Volvo, Plaintiff was told that there would be ample opportunity for working Overtime.

9.  When Plaintiff began working as a (first position), she would volunteer for overtime by putting her name on a list that was posted.

10. Later, when Plaintiff became the Outbound Team Lead, she would request overtime based on the volume of work, and Plaintiff never worked overtime unless she obtained approval from the 2nd Shift Outbound Manager, Bruise Wright, male.

11. Typically, at the beginning of a shift, as assessment was made of the volume of work for that day and then the necessary amount of overtime was determined based on that.

12. In a meeting at 4 p.m. (i.e., shift started at 2 p.m.), Mr. Wright would verbally approve overtime to the Team Leads and this would dictate how many hours Team Leads would add

on to the end of their regular shift.

13. The volume of work in Plaintiff's area, the Volvo Pack Line, was typically very high.

14. From May 2018 through September 2018, Plaintiff was working approximately 35 to 39 hours of overtime per week.

15. Then, between October 2018 and January 2019, the overall workload decreased somewhat, so Plaintiff's overtime hours correspondingly decreased to 10 to 20 per week.

16. Despite the process in place for approving overtime hours, and Plaintiff's consistent compliance with it, in November, 2018, Plaintiff received an unwarranted Corrective Action for using "Excessive Overtime." No clear definition as to what constitutes appropriate as compared to "excessive" use of Overtime was given.

17. Plaintiff complained about this to Mr. Wright, noting that she had never worked unapproved overtime and that she had never received any indication that the amount of her overtime work was excessive.

18. Mr. Wright downplayed the significance of the Corrective Action, telling Plaintiff that he had received one himself, and it would have no effect on Plaintiff's raises.

19. Plaintiff decided from that point on to start sending emails to Mr. Wright to confirm in writing the verbal approval that she had always received at the daily meetings.

20. Plaintiff repeatedly had to remind Mr. Wright to respond to her emails, confirming his receipt and acknowledging the approval that he had already given verbally.

21. On January 4, 2019, Plaintiff was called to a meeting with Mr. Wright and another Team Lead, Jarvis Jeffries.

22. Among other things, Mr. Wright stated that once the work was completed in their

individual areas at the end of their regular shift, all Team Leads were to go assist with the Volvo Pack Line, i.e., the high-volume area where Plaintiff was the Team Lead.

23. Mr. Wright then stated, that he wanted Plaintiff and Mr. Jeffries to swap areas, so that Plaintiff would become the Team Lead over Bulk, and Mr. Jeffries would become the Team Lead over the Volvo Pack Line.

24. Mr. Wright further made clear that since Mr. Jeffries was not experienced with the high-volume Volvo Pack Line, all Team Leads were encouraged to work overtime and assist in this area when their regular shift work was completed.

25. Beginning on January 7, 2019, Mattix reported to Bulk to assume her duty as the Team Lead in that area.

26. Once Plaintiff's regular shift duties in her area were complete, Plaintiff reported to the Volvo Pack Line, along with Jawanda Simmons, Team Lead of Export, and her team, and others from other teams to work overtime in that area.

27. Mr. Jeffries was also present, since he was now working as the Team Lead of the Pack Line.

28. Plaintiff and the other Team Leads continued this routine from January 7, 2019 through January 14, 2019.

29. On January 14, 2019, at 5:00 p.m., Mr. Wright asked Plaintiff how she felt about her new position in Bulk.

30. Plaintiff responded that Bulk was a very slow department compared to the Pack Line.

31. Plaintiff further stated that she was grateful to be able to go work on the Pack Line once she had completed her duties in Bulk.

32. Mr. Wright responded to this statement by nodding his head in agreement.

33. On the very next day, January 15, 2019, while passing out work assignments, Plaintiff was interrupted by Acting First Line manager, Dedrick Fulkner.

34. Mr. Fulkner told Plaintiff that Mr. Wright had instructed her to have Plaintiff collect all her belongings and go to the office of Derrick Haire in Human Resources.

35. When Plaintiff arrived, Mr. Wright was present.

36. Mr. Wright began by stating that once Plaintiff completed her work duties in Bulk, Plaintiff was supposed to stop working for the day.

37. Mr. Wright further stated that since Plaintiff had stayed over and worked in the Volvo Pack Line between January 7, 2019 through January 14, 2019, she was being terminated "for stealing time."

38. Plaintiff appealed to the verbal interaction that she had had with Mr. Wright just one day earlier, but Mr. Wright claimed to have no recollection of it.

39. This action by Mr. Wright is problematic for several reasons.

40. First, as noted above, Plaintiff had sent emails to Mr. Wright on a weekly basis detailing her overtime work and confirming his prior verbal approval.

41. Second, on January 4, 2019, while speaking to Plaintiff and Mr. Jeffries, Mr. Wright had clearly encouraged all Team Leads to assist with the Pack Line when they had completed their regular shift duties in their respective areas.

42. Finally, not only had Mr. Wright instructed Plaintiff to work on the Pack Line and approved the overtime for it, Mr. Wright had acknowledged and approved that Plaintiff was cooperating with his instructions in a face to face conversation one day earlier.

43. Yet now, 24 hours later, Mr. Wright claimed Plaintiff was "stealing time" and

terminated her employment with the Defendant.

44. It is significant that around August or September, 2018, a male Team Lead, Mr. Jarvis Jeffries, was suspended for three days for "Stealing Time."

45. In other words, like Plaintiff, he was written up for excessive use of overtime.

46. Mr. Jeffries, however, was not terminated.

47. Also, in November, 2017, another male Team Lead, Johnell Jeffries, was suspended for stealing some products (i.e., some fans).

48. As discipline for this violation, Mr. Johnell Jeffries was suspended for three months.

49. Mr. Johnell Jeffries was later paid back pay for the three months and he was allowed to return to work at the end of that time.

50. Both these similarly situated males worked in the same department, the same shift, and had the same job title as Plaintiff, yet they were not terminated for their violations.

51. It is also significant that Team Leads were scheduled to receive a Cost of Living raise in January 2019, but Plaintiff never received it, i.e., Plaintiff should have seen it reflected in her last check.

52. Plaintiff has been discriminated against in the terms and conditions of her employment on the basis of her sex, female. Plaintiff is a member of a protected class, female.

53. The Defendant violated Title VII of the Civil Rights Act, as amended, by terminating Plaintiff because of her sex, female.

54. Defendant, Mr. Wright, tortiously interfered in Plaintiff's employment relationship with Defendant, Volvo Group North America, LLC. As a result, Plaintiff suffered damages (loss of income and benefits) as a result of Mr. Wright's actions.

## CAUSES OF ACTION

### COUNT I - VIOLATION OF THE FAIR LABOR STANDARDS ACT - RETALIATION

55. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 54 above as if fully incorporated herein.

56. Plaintiff was a non-exempt employee and subject to the provisions of the Fair Labor Standards Act as it pertains to whether or not Plaintiff was entitled to overtime pay for all hours over forty (40) hours worked in a given week. Plaintiff worked an average of 70 hours a week. Defendant unlawfully retaliated against Plaintiff for working overtime which had been approved by her supervisor..

57. The Fair Labor Standards Act prohibits unlawful retaliation.

58. Plaintiff has been harmed as a result of Defendant's unlawful retaliation, and Defendant is liable to Plaintiff under the terms and conditions of the Fair Labor Standards Act.

59. The acts of the Defendant constitute a willful intentional violation of the Fair Labor Standards Act.

### COUNT II - VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

60. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 59 above as if fully incorporated herein.

61. Plaintiff has been discriminated against in the terms and conditions of her employment on the basis of her sex, female.

62. Plaintiff is a member of a protected class, female, and was more than qualified for her position.

63. The Defendant violated Title VII of the Civil Rights Act, as amended, by terminating Plaintiff because of her sex, female.

64. Plaintiff has suffered an adverse employment action as a result of the Defendant's discriminatory treatment of Plaintiff. Plaintiff's Manager, Defendant Wright, targeted Plaintiff for termination because Plaintiff was a female.

65. Plaintiff has been harmed as a result of the Defendant's discrimination, and the Defendants are liable to Plaintiff for the same.

66. The unlawful actions of the Defendant complained of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff which entitle Plaintiff to damages, both compensatory and punitive in nature.

### COUNT III: TORTIOUS INTERFERENCE WITH EMPLOYMENT - DEFENDANT BRUISE WRIGHT

67. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 66 above as if fully incorporated herein.

68. Defendant, Mr. Wright, tortiously interfered in Plaintiff's employment relationship with Defendant, Volvo Group North America, LLC. As a result, Plaintiff suffered damages (loss of income and benefits) as a result of Mr. Wright's actions.

69. As such, Plaintiff is seeking an award of compensatory damages in an amount to be determined by the jury to fully compensate him for Mr. Wright's actions in tortiously interfering with his employment relationship with Defendant Volvo Group North America, LLC.

70. In addition, Defendant Wright's actions were done maliciously with the intent to cause Plaintiff injury. As such, Plaintiff is entitled to an award of punitive damages against Defendant Wright in an amount to be determined by the jury.

### PRAYER FOR RELIEF

**WHEREFORE PREMISES CONSIDERED,** Plaintiff respectfully prays that upon hearing of this matter by a jury, the Plaintiff be granted the following relief in an amount to be

determined by the jury:

1. Back wages and reinstatement; or
2. Future wages in lieu of reinstatement;
3. Compensatory wages;
4. Liquidated damages;
5. Punitive damages
6. Pre-judgment and post-judgment interest;
7. Attorney fees and costs; and
8. Such other relief as the Court deems just and appropriate.

THIS the 17th day of April 2019.

Respectfully submitted,

KARMELIA MATTIX, PLAINTIFF

By: _____
Louis H. Watson, Jr. (MB# 9053)
Nick Norris (MB# 101574)
Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
1880 Lakeland Drive, Suite G
Jackson, MS 39216-4972
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
Email: louis@watsonnorris.com
       nick@watsonnorris.com